# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO OLIVAS,<br><br>    Petitioner,<br><br>    v.<br><br>P.L. VASQUEZ, Warden<br><br>    Respondent. | 1:08-cv-01605-OWW-SMS (HC)<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>[Doc. 1] |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is represented by Robert Navarro, Esq.

## BACKGROUND

On June 4, 2004, Petitioner pled guilty to being a felon in possession of a firearm, a .22-caliber rifle (Cal. Penal Code § 12021(a)(1),[1] count one). Petitioner also admitted three prior strike convictions within the meaning of the Three Strikes law (§§ 667(c)-(j) & 1170.12(a)-(e)), consisting of violations of section 261.2,[2] sections 220/288(a), and section 245(a)(1), and one prior prison term within the meaning of section 667.5(b). All other charges were dismissed in exchange for his plea.

On July 1, 2004, the trial court denied Petitioner's motion to strike his prior convictions,

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

[2] Although the record indicates section 261.2, it appears the provision intended was section 261(a)(2), the current citation for forcible rape. (Compare § 261 (West 1990).)

1

1 | and he was sentenced to a total state prison term of 25 years-to-life. (CT 6.)

2 | Petitioner filed a timely notice of appeal to the California Court of Appeal, Fifth Appellate District. On February 21, 2006, the Court of Appeal vacated Petitioner's sentence, finding one of the strike convictions did not qualify as a strike and his trial attorney rendered ineffective assistance for failing to raise such issue to the trial court.[3] The case was remanded for reconsideration of Petitioner's motion to strike the prior convictions "and for resentencing following preparation and consideration of a new probation report." (CT 5-12.)

Thereafter, on June 30, 2006, Petitioner filed a motion pursuant to section 1385 to strike one of the prior convictions. (CT 50-68.) The People filed an opposition on July 7, 2006. (CT 118-127.)

On July 11, 2006, the trial court denied Petitioner's motion to strike a prior conviction and resentenced him to 25 years-to-life and stayed the one-year prior prison term enhancement. Petitioner was given credit for a total of eighty-seven presentence custody days and the California Department of Corrections and Rehabilitation was ordered to recalculate credits for time served by Petitioner after his original commitment. In addition, Petitioner was ordered to pay fines and restitution. (CT 130-131, 135-136.)

The California Court of Appeal affirmed the judgment, with the exception of striking the prior prison term enhancement and modifying the custody credits. (Lodged Doc. No. 5, Opinion, at 9.) The California Supreme Court denied review. (Lodged Doc. Nos. 3-4.)

Petitioner filed the instant federal petition for writ of habeas corpus on October 23, 2008. (Court Doc. 1.) Respondent filed an answer to the petition on January 30, 2009. (Court Doc. 14.) Petitioner filed a traverse on March 28, 2009. (Court Doc. 19.)

---

[3] The Court specifically found that Petitioner's 1993 conviction for assault under section 245, subdivision (a)(1), did not constitute a "serious felony" as defined by section 1192.7, subdivision (c), and thus a "strike" under the three strikes law. (CT 9, Opinion at 9.) Thus, contrary to Respondent's argument in his answer (*see* Answer, at 7), Petitioner did suffer a prior strike conviction for assault with a deadly weapon.

2

STATEMENT OF FACTS[4]

On May 4, 2004, at approximately 12:58 a.m., officers effected a traffic stop on a suspect vehicle for speeding. The driver of the vehicle was identified as Juan Carlos Olivas, the defendant. While speaking to the defendant, officers observed a twelve-ounce opened can of Budweiser beer near the floorboard of the vehicle and a glass water bong sitting on top of the front passenger seat. The defendant exited the vehicle and was searched, at which time officers located a pocket knife and a glass narcotics smoking pipe on his person.

A search of the defendant's vehicle revealed a knife hidden between the front driver's seat and the transmission. In the trunk area of the vehicle, officers located a pair of jeans which were wrapped around a .22 caliber rifle with a broken stock. The firearm was not loaded; however, it appeared to be functional.

When questioned, the defendant stated he found the rifle near the Howard's Mini Market at the corner of Bernard and Haley Streets. He stated the pipe found on his person was used for incense burning, not for narcotics use and denied knowledge of the glass water bong lying on the front passenger seat of the vehicle. The defendant was subsequently transported to the Kern County Jail and booked. Further investigation revealed the defendant was on parole at the time of the arrest.

(CT 6-7.)

## DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114

---

[4] The Court finds the Court of Appeal correctly summarized the facts in its first opinion on direct review dated February 21, 2006. (CT 6-7.) Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.

F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.  Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams (Terry) v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id., quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (*per curiam*). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254

4

apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991).  However, where the state court decided an issue on the merits but provided no reasoned decision, courts conduct "an independent review of the record . . . to determine whether the state court [was objectively unreasonable] in its application of controlling federal law."  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

C.  <u>Cruel and Unusual Punishment</u>

Petitioner contends that his sentence of 25 years- to- life pursuant to the Three Strikes law amounts to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.  (Petition, at 7.)

A criminal sentence that is not proportionate to the crime for which a defendant is convicted may indeed violate the Eighth Amendment.  In Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133 (1980), the Court upheld a life sentence imposed under a Texas recidivist statute for a defendant convicted of obtaining $120.75 by false pretenses, an offense normally punishable by imprisonment for two to ten years.  Rummel v. Estelle, 445 U.S. 263, 266, 100 S.Ct. 1133, 1135 (1980).  However, because he had two prior felony convictions (for fraudulent use of a credit card and passing a forged check), and had served two prior prison terms, the prosecution chose to proceed under the state's recidivist statute, which carried a life sentence.  Id. The Supreme Court held that Rummel's sentence of life imprisonment *with* the possibility of parole did not violate the Eighth Amendment.  Id. at 365-266, 100 S.Ct. at 1135. (emphasis added).  The Court noted that Rummel had suffered two separate convictions and terms of imprisonment for each prior, that he would be eligible for parole in twelve years, and that under the Texas recidivist statute, prosecutors retained the discretion not to invoke the statute for "petty" offenders.  445 U.S. at 278-81, 100 S.Ct. at 1141.

Three years later, the U.S. Supreme Court set forth the criteria for finding a sentence to be

cruel and unusual punishment under the federal Constitution and affirmed a decision of the Eighth Circuit holding unconstitutional a sentence of life imprisonment without the possibility of parole for a seven-time nonviolent felony recidivist. Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001 (1983). Applying the proportionality criteria, the Court concluded that Solem's sentence was grossly disproportionate to his crime of uttering a "no account" check for $100.00, even in light of his prior six nonviolent felony convictions: three for third degree burglary, one for obtaining money under false pretenses, one for grand larceny, and one for driving while intoxicated. Id. at 279-81, 103 S.Ct. at 3004-5. The Court emphasized that Solem's life sentence was far more severe than the sentence it had considered in Rummel, because Rummel was likely to be eligible for parole in twelve years, while Solem was given no possibility of parole at all. Id.

In Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680 (1991), the defendant received a mandatory sentence of life in prison *without* the possibility of parole for possession of more than 650 grams of cocaine, his first felony offense. Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680 (1991) (emphasis added). The U.S. Supreme Court upheld the sentence, with five justices agreeing, for varying reasons, that the sentence did not violate the Eighth Amendment. Although the Court did not produce a majority opinion, seven justices favored some manner of proportionality review. Justice Kennedy, joined by Justices O'Connor and Souter, stated that a noncapital sentence could violate the Eighth Amendment if it was "grossly disproportionate" to the crime, but concluded that courts need not examine the second and third factors of intrajurisdictional and interjurisdictional reviews discussed in Solem, unless "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Id. at 1005. The Ninth Circuit, adopting Justice Kennedy's concurring opinion in Harmelin, now refers to the test articulated as "the rule of Harmelin." Andrade v. Attorney General of the State of California, 270 F.3d 743, 756 (9th Cir. 2001).

The majority of the justices in the Harmelin court agreed that outside capital punishment, deeming a sentence cruel and unusual punishment is "exceedingly rare" due to the lack of objective guidelines for terms of imprisonment. Harmelin, 501 U.S. 957, 964, 111 S.Ct. 2680 (1991). The threshold for such an inference of disproportionality is high. Id. at 1001, 111 S.Ct.

at 2707 (Kennedy, J. concurring).  Generally, so long as the sentence imposed by the state court does not exceed statutory maximums, the sentence will not be considered cruel and unusual punishment under the Eighth Amendment.  United States v. McDougherty, 920 F.2d 569, 576 (9th Cir. 1990).

The Harmelin court concluded that the defendant's sentence did not meet the threshold factor of "gross disproportionality."  Justice Kennedy stressed the serious nature of Harmelin's offense, stating that the offense "threatened to cause grave harm to society" unlike "the relatively minor, nonviolent crime at issue in Solem."  Harmelin v. Michigan, 501 U.S. 957, 1002, 111 S.Ct. 2680, 2705 (1991).  Justice Kennedy further noted that the "possession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population.'" and that the quantity of cocaine possessed by Harmelin had a potential yield of between 32,500, and 65,000 doses.  Id.

In Lockyer v. Andrade, 538 U.S. 63 (2003), the Supreme Court discussed the current state of Eighth Amendment proportionality review and held that the only clearly established governing legal principle is that a "gross disproportionality" review applies to criminal sentences for a term of years.  Id. at 72.  Citing extensively to its past cases dealing with criminal sentencing and proportionality under the Eighth Amendment, the Court acknowledged that it has "not established a clear and consistent path for courts to follow."  Id.  The Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' frame work is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."  Id.

In Ewing v. California, 123 S. Ct.1179 (2003), the Supreme Court again reviewed the Supreme Court's Eighth Amendment jurisprudence, and chose to adopt Justice Kennedy's view [5] that:

> [There are] four principles of proportionality review-- the primacy of the legislature; the variety of legitimate penological schemes; the nature of our federal system; and, the requirement that proportionality be guided by objective factors–

---

[5] As expressed in his concurring opinion in Harmelin v. Michigan, 501 U.S. 957, 1001 (1991), *citing* Solem v. Helm, 463 U.S. 277, 288 (1983).

7

| | |
|---|---|
| 1 | that inform the final one: The Eighth Amendment does not require strict proportionality between the crime and the sentence. Rather, it forbids only |
| 2 | extreme sentences that are 'grossly disproportionate' to the crime. |

Ewing, at 1186-1187.

In denying his claim on direct review, the last reasoned decision of the California Court of Appeal held, in pertinent part, as follows:

> The cruel and unusual punishment clause of the Eighth Amendment of the federal Constitution also includes a "'a narrow proportionality principle' that 'applies to noncapital sentences.'" (*Ewing v. California*, supra, 538 U.S. at p.20.) In *Ewing*, the Supreme Court reiterated the right of California to make "a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violence crime" and concluded that "[n]othing in the Eighth Amendment prohibits California from making that choice." (*Id*. at p.25.) As the court noted "[i]n weighing the gravity of [a defendant's] offense, we must place on the scales not only his current felony, but also his long history of felony recidivism." (*Id*. at 29.)
>
> Olivas' prior offenses constituted serious antisocial behavior, and his current offense and behavior suggest he has done little to rehabilitate himself. Olivas was armed not only with the unloaded firearm, but with two knives, establishing a potential for violence, even if none had yet occurred. He was on parole and expressly prohibited from possessing weapons. He suffered a prior possession conviction as a juvenile. His prior offenses were violent. Given these circumstances, the sentence imposed is well within constitutional parameters. (*Ewing v. California*, supra, 538 U.S. at pp. 18, 19, 30-31 [three strikes sentence of 25 years to life not cruel and unusual punishment under federal Constitution for current offense of shoplifting three golf clubs with three prior burglaries and prior robbery]; *People v. Romero* (2002) 99 Cal.App.4th 1418, 1424, 1433 [three strikes sentence of 25 years to life not cruel or unusual punishment under California Constitution for current offense of shoplifting magazine with prior burglary and prior lewd act with child under age 14].) Olivas's sentence punishes him not "merely on the basis of his current offense but on the basis of his recidivist behavior." (*People v. Kinsey* (1995) 40 Cal.App.4th 1621, 1630.) For all these reasons, we conclude that Olivas's sentence is not "grossly disproportionate" and therefore not cruel or unusual. (*Ewing v. California*, supra, 538 U.S. at p.23; *People v. Romero*, supra, 99 Cal.App.4th at p. 1431.)

(Lodged Doc. No. 5 at 5-6.)

In this case, the appellate court properly applied governing Supreme Court precedent as set forth in Ewing. The state court properly found the instant circumstances indistinguishable from those present in Ewing. Ewing received a three strikes sentence of 25 years- to- life for shoplifting golf clubs worth about $1,200 after suffering prior burglary and robbery convictions. Ewing, 538 U.S. at 18-19, 30-31. In Lockyer v. Andrade, the Court upheld the California Court of Appeal's determination that a sentence of two consecutive terms of 25-years-to-life for two

convictions of non-violent petty theft with a prior theft-related conviction, and three prior counts of first-degree residential burglary, as not unconstitutional under the Eighth Amendment. 538 U.S. at 73-77. In this instance, Petitioner's prior convictions for forcible rape and assault with intent to commit oral copulation on two separate victims, were at least as, or arguably more, serious than the burglary and robbery convictions in Ewing. In rendering Petitioner's life sentence, the trial court discussed the circumstances of the prior strike offenses stating:

> On July 11th of '93 [Petitioner] raped his 16-year-old ex-girlfriend. She suffered bruising and tearing of the labia, so physical injuries consistent with the forced sexual intercourse. He tried to force her 16-year-old friend to orally copulate him. And later, when she was looking at him wrong, he punched her in the jaw, causing bruising. Those result[]ed in his prior convictions for 261.2, 220, 288(a), and 245(a)(1), two of which are strikes. After a jury trial, the court felt the facts warranted the maximum sentence of 15 years in prison, which he served approximately eight years, . . ., being paroled in 2001.

(RT 36-37.)[6]

In addition, the crime of being a felon in possession of a firearm in this instance is certainly not as passive as the shoplifting offense in Ewing and petty thefts in Andrade.[7] Given

---

[6] In addition, the trial court noted the extent of Petitioner's criminal history stating:
   When reviewing the defendant's criminal history, I look first at his December 9th, '89 adjudication for 12020, possession of a knife involving the defendant at 1:55 in the morning, walking down the street, when the officer approaches, he ditches the knife, denies knowledge of the knife, but later admits he found the knife in the dirt. Like in this case, I found the knife or gun in the alley is what he said.
   While he was on juvenile probation, he had four separate convictions for Vehicle Code violations, thereby not having good performance on juvenile probation.
   He was then arrested in 1993 for 11550 and false name to a peace officer, involving officers dispatched to a fight. They contacted the defendant, who happens to be in the area, no evidence he was fighting. He gives them the name of Carlos Olivas, which I believe is the name he gave in this case, his brother. He was under the influence and admitted using crank. He gives a false name, date of birth and place of birth.
   Now, 11 years later, when he's arrested in '04, same thing; false name, date of birth and place of birth, indicating that his type of behavior has not really changed so much in the 11 years since that offense.

(RT 35-36.)

[7] In addressing Petitioner's argument that his commitment offense-possession of firearm-was a mere "passive minor felony", the trial court pointed out:
   . . . the defendant [was] driving around at one in the morning with an open container of alcohol, narcotics pipe in his pocket, deep in his pockets, a water bong, a concealed dagger, a rifle in the trunk that had a shortened barrel capable of being concealed on the person. He gave a false name, he used his brother's driver's license, gave a false date of birth, false place of birth. Denied any criminal history.
   So, I know you describe this as a passive minor felony, but as 12021's go, I'd say it's a

9

Petitioner's prior record involving violence, there was more than ample justification for imposition of a 25 years- to- life sentence with the possibility of parole.  Thus, there was a sufficient basis for the state courts to conclude that Petitioner has demonstrated an inability "'to bring his conduct within the social norms prescribed by the criminal law of the State'" Ewing, 538 U.S. at 21 (quoting Rummel, 445 U.S. at 284.), and he is precisely the type of offender that the Three Strikes law is intended to punish.

In his petition, Petitioner analogizes the circumstances of his case to those of five cases- one decided by the California Court of Appeal, two decided by the United States Court of Appeals for the Ninth Circuit, and two decided by federal district courts in California - none of which set forth "clearly established Supreme Court authority" under 28 U.S.C. § 2254(d)(1).  Indeed, Petitioner acknowledges the Supreme Court's opinions in Ewing and Andrade, but he argues that the United States Supreme Court will "embrace the view" of the dissenting justices if "given the opportunity." (Petition, at 23-24.)  In his traverse, Petitioner attempts to distinguish the factual circumstances present in Ewing and Andrade from the instant case.  However, for the reasons explained *supra*, a comparison of Petitioner's case to both Ewing and Andrade, demonstrates that his sentence does not violate the Eighth Amendment's prohibition against cruel and unusual punishment.

While the triggering offense of felon in possession of a firearm may not be as serious as Petitioner's prior strike offenses, under California law, any felony can constitute the third strike and result in a term of 25 years- to- life.  Lockyer v. Andrade, 538 U.S. at 67.  As pointed out by one California Appellate Court, "the California Legislature views the possession of a handgun by an ex-felon to be a serious offense.  The intent underlying section 12021, subdivision (a), was to limit the use of instruments commonly associated with criminal activity and to minimize the danger to public safety arising from the free access to firearms that can be used for crimes of violence. [Citation.] The law properly presumes the danger is greater when the person possessing

---

serious 12021.

(RT 34-35.)

the firearm has previously been convicted of [a] felony." People v. Cooper, 43 Cal.App.4th 815 824-825 (1996) (citing People v. Bell, 49 Cal.3d 502 (1989).) Therefore, Petitioner's characterization of the triggering offense of possession of a firearm by a felon as a passive felony is not in line with the reasoning of the Legislature in punishing such conduct and is not well-taken. Accordingly, for the reasons explained above, there is simply no basis to conclude that the state court decision was objectively unreasonable in light of the existing United States Supreme Court precedent, or an unreasonable application of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1), (2).

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and,

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   May 7, 2009**                /s/ Sandra M. Snyder
                                         UNITED STATES MAGISTRATE JUDGE